## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

Donna L. Perry-Anderson )
335 34TH Street, N.E. )
Washington, DC 20019 )
 )
    Plaintiff, )    **CIVIL ACTION NO.**
 )
    v. )    **PLAINTIFF DEMANDS A**
 )    **JURY TRIAL**
Howard University Hospital )
6323 Georgia Avenue, N.W., Ste. 207 )
Washington, DC 20011 )
 )
SERVE: )
  Gwendolyn Webster )
  6323 Georgia Ave., NW, Ste. 207 )
  Washington, DC 20011 )
 )
    Defendant. )
 )

## COMPLAINT

Plaintiff, Donna L. Perry-Anderson, brings this action alleging that Defendant failed to

provide Plaintiff with a reasonable accommodation for her disability and subsequently

terminated her employment in violation of the Americans with Disabilities Act (42 U.S.C.

§12101 *et seq.*) as amended by the ADA Amendments Act of 2008.

### I.   JURISDICTION AND VENUE

1.      Jurisdiction over this action is proper pursuant to 28 U.S.C. §1331 and 28 U.S.C.

§1343.

2.      Venue in this court is proper because the conduct complained of occurred in the

District of Columbia, where the Complainant was previously employed.

1

## II.  THE PARTIES

3.      Plaintiff, Donna L. Perry-Anderson, is a citizen of the United States who resides in the District of Columbia, and at all times relevant to this Complaint was an "employee" of Defendant, Howard University Hospital, as defined under the Americans with Disabilities Act, as amended.

4.      Howard University Hospital, a private, Non-Profit Corporation, is an employer as defined by the Americans with Disabilities Act, as amended.

## III. THE FACTS

5.      Plaintiff was hired as an Administrative Assistant and began working at Howard University Hospital on October 16, 1998.

6.      Plaintiff's work performance led to her promotion to Executive Assistant in the department of Nursing.  Plaintiff later transferred to the Finance Department in 2008 as the Executive Assistant, reporting directly to the Chief Financial Officer (CFO) and Deputy Chief Financial Officer, Lillian Chukwuma, who was Plaintiff's immediate supervisor.

7.      As the Executive Assistant, Plaintiff served as the CFO and Deputy Chief Financial Officer's right hand person, managed the administrative affairs of the Office and supervised the administrative assistant staff.

8.      In her position Plaintiff's work day regularly exceeded 8 hours and she often was unable to take a lunch break.

9.      In September 2009, Plaintiff's health began to fail and she was placed on bed rest with a scheduled return to work date of October 12, 2009.  The day before she was scheduled to return to work, Plaintiff suffered a right brain infarction (stroke) and was hospitalized on at least two subsequent occasions following the initial stroke on October 11, 2009.

10.     Plaintiff applied for and was granted leave under the Family and Medical Leave Act.  Her return date was tentatively set for December 2009.

11.     The medical documentation prepared by Complainant's treating physician explicitly identified Plaintiff's diagnosis as Stroke, ICD-9 code 434.91, with symptoms of weakness and fatigue, numbness in her hands, slurred speech and abnormal, involuntary movements.

12.     As a result of the stroke, Plaintiff's neurologic functions were affected; she experienced memory loss and difficulty concentrating, she required assistance caring for herself, the numbness and tingling often prevented her from holding items in her hands, she could not tend to the needs of her family; nor could she drive. Plaintiff also suffered bouts of anxiety, insomnia and loss of appetite.

13.     On or around November 16, 2009, while she was on leave Plaintiff spoke to her immediate supervisor  regarding her return to work date and her doctor's instructions that she transfer to a less stressful job in which her work week did not exceed 40 hours.  During that telephone call, Plaintiff informed her immediate supervisor that she needed her job and would return to the position as Executive Assistant, if she were not able to transfer to another position.

14.     Plaintiff's medical condition did not improve to the desired level and her physician extended her medical leave of absence with an anticipated return date of March 1, 2010.

15.     On or around January 29, 2010, Defendant notified Plaintiff that she had exhausted her leave under the Family and Medical Leave Act (FMLA) and, therefore, they intended to fill her position because she would not be returning to her position as Executive

Assistant prior to the expiration of her FMLA leave.  Defendant also made it clear to Plaintiff

that it had no further obligation to return her to her position or any other position.

16.     On or around February 2, 2010, Plaintiff informed Defendant that she was willing

to return to her position as Executive Assistant if a transfer were not possible, and confirmed

that she had not delayed her return because she was attempting to transfer to a new position,

but because her doctor had extended her return date due to her medical condition.

17.     Defendant informed Plaintiff that her immediate supervisor was not willing to

allow her to return to her position as Executive Assistant.

18.     From December 2009 through the end of May 2010, Plaintiff attempted to

identify transfer options for which she could be considered and informed Defendant of these

transfer options in an effort to facilitate her return to work in a position that would not

aggravate her neurological symptoms or exceed a 40-hour work week.

19.     Defendant instructed Plaintiff to apply for vacant positions.  She was not

permitted to return to her position as an executive assistant.

20.     Plaintiff remained in an unpaid status from March 1 through July 8, 2010, when

she was informed that her employment with Defendant was terminated.

21.     The position as an Executive Assistant that Plaintiff held before suffering a stroke

remained unfilled for more than 15 months after Plaintiff was cleared to return to work.

### IV.  STATEMENT OF CLAIMS

### COUNT I
### (Violation of the Americans with Disabilities Act, As Amended)

22.      Plaintiff incorporates herein as though fully set out the assertions contained in

paragraphs 1-21 of the Complaint.

23.     As a result of her stroke, Plaintiff's neurological and cardiovascular systems were

affected and she was unable to care for herself, experienced lapses in memory, fatigue and depression. At least one of Plaintiff's major bodily functions – neurological - also was affected as a result of the stroke. As such, Plaintiff at all times relevant to this Complaint was an individual with a disability as defined under the Americans with Disability Act, as amended.

24.     Plaintiff has a history of an impairment that substantially limited her neurological and cardiovascular systems, among other physiological conditions, as reflected in the medical documentation she provided to Defendant to support her request for leave under the Family Medical Leave Act. As such, Plaintiff had a record of disability as defined under the Americans with Disability Act, as amended.

25.     Plaintiff 's physician advised Defendant that Plaintiff needed to work in a less stressful position, which included reducing her expected work day from 12 hours to 8 hours and allowing her to take a lunch break, as accommodations which would have enabled her to return to her position or another comparable position.

26.     Plaintiff repeatedly expressed to Defendant her need and desire to return to work in a less stressful position if possible, but to her pre-stroke position if there was no other option.

27.     Defendant refused to provide this reasonable accommodation, although it could have returned Plaintiff to her former position as of March 2010, or another position Plaintiff had identified.

28.     Instead of providing a reasonable accommodation, Defendant informed Plaintiff that she could not return to her pre-stroke position or at least one other position she had identified, and terminated Plaintiff's employment in violation of the Americans with

Disabilities Act, as amended.

## COUNT II
**(Violation of the Americans with Disabilities Act, As Amended)**

29.     Plaintiff incorporates herein as though fully set out the assertions contained in paragraphs 1-28 of the Complaint.

30.     Plaintiff identified a position in the Risk Management department, for which she was qualified as determined by the hiring manager, and for which the work schedule restriction advised by her physician could have been accommodated, but Defendant blocked the transfer and ultimately involuntarily terminated Plaintiff due to her disability in violation of the Americans with Disabilities Act, as amended.

## IV. JURY DEMAND

31.  Plaintiff demands a trial by jury on both counts of this Complaint.


WHEREFORE, Plaintiff prays for judgment against Defendant for all damages available under the law, including back pay, pre-judgment interest, front pay, compensatory damages, punitive damages, reasonable attorneys' fees, costs herein expended and other relief as the Court deems just and proper.


Respectfully submitted,

Dawn R. Jackson, Esquire
Jackson & Associates Law Firm, PLLC
1300 Caraway Court, Suite 100
Upper Marlboro, MD 20774
Tel.: (301) 883-0800
Fax: (202) 883-0801